Greene J.
delivered the opinion of the court.
The several bilis, answers and proof in this case show that C. & W. Bayliss were judgment creditors of the complainant, Cooley, and that an execution in their favor was levied on a negro girl, Delia, the property of complainant, and that when she was sold, C. Bayliss, forC. and W. Bayliss, purchased, her. The girl was sold the 25th day of May, 1825, and the 14th of January 1826, the defendants being judgment creditors to the amount of upwards of $130, redeemed the said girl from Bayliss, paying him for his debt and ten per cent thereon, $74 08£. Shortly afterwards and in the same month, Cooley agreed to sell the girl to Thomas D. Beauchamp for *142 §200, and it was agreed between them that Beauchamp should the girl from Weeks, by paying Cooley about §75 00. In pursuance of this agreement, Beauchamp tendered to Weeks a one hundred dollar bank note, out of which to take his own money, which Weeks refused to receive, and required before he would permit a redemption of the negro, that the sum lie had paid to Bayliss should bo paid him, and also the whole of his otvn debt. 1 his was not done, and Beauchamp ceased to have any interest in the matter. After this Cooley procured an agreement from John Scarborough, by which the latter was to give him §215 for the girl, and to redeem her from Weeks. Some informal offers were made to Weeks by Scarborough, but as Weeks constantly refused (o permit a redemption except upon the terms before staled, mulling was done. After the two years elapsed within which the right of redemption existed, the defendants issued their execution against Cooley, crediting thereon only seven dollars.
Upon these facts the first question is, whether there was a good tender made to the defendants, by which the complainant became entitled to redeem the negro. The tender was made of a one hundred dollar hank note. No objection ivas made to the bank note, but it was refused because the defendant, Weeks, insisted he was entitled to receive a greater sum. The tender therefore was as good as though it had been made in gold or silver coin. Ball vs. Stanley, 5 Yer. Rep. 201: Norris’ Peake. 432: 4 Espin. Rep. 267; 3 Term Rep. 554.
The next quest'on is, whether the sum tendered was sufficient to entitle the complainant to redeem. By the act of '1820, c 11, § 2, a debtor whose land or negroes may be sold at execution sale, is authorised to redeem the same of the purchaser, or of any person who may hold under him, within two years from the time of the sale, by paying the sum bid at the sale with ten per cent, interest.thereon, and such other lawful charges as may exist.
By the third section of the act, a bona fide creditor of the person whose property may have been sold, may redeem th,e same of the purchaser, by paying the money bid at the sale, and ten per cent, thereon, and crediting the debtor ten per cent, on the amount bid at the sale. By the fourth section it *143 is provided that if dio purchaser at execution sale, or the person claiming under him shall also be a bona fide creditor to the amount proposed to be advanced on tbe bid at execution sale, at the time that any bona fide creditor may propose to make the advance, it may be at the option of such purchaser or those claiming under him to credit the debtor with the sum proposed to be advanced ou the bid, and keep the property or surrender tbe same in tbe maimer aforesaid, to such person offering to make tbe advance. It was decided in the case of Hawkins vs. Jamison, Mar. Yer. Rep. 83, that a proper construction of this act would authorise the purchaser at exe-tionsale, or those claiming under him, to credit tbe debtor the sum proposed to be advanced by such debtor himself, when be might come to redeem, in tbe same way be might do under tbe 4tb section, if another bona fide creditor were to offer to redeem. Judge Catron in that case says: “The meaning of tbe law must be, that if the debtor comes forward to redeem, the creditor, (who is also purchaser,) may say to him, I have an unsatisfied debt against jou, and bid ten or twenty percent, on my former bid and give you credit. I redeem the property at that, says the debtor. I advance the balance of my debt says tbe creditor. I still redeem says the debtor, and here tbe matter ends.” Tbe opionion of judge Crabbe in the same case expresses in substance the same view of this act with that of judge Catron.
We are not disposed at ibis day to attempt, by any reasoning of ours, an exposition of this act of assembly. It is very in-artificially drawn, and it may perhaps be difficult to tell what is tbe meaning of some of its provisions. We are content to act upon tbe exposition which tbe court have given in Hawkins vs. Jamison. We feel assured that tbe court in that case, by construing the fourth section as applying to tbe debt- or, (who is not named in it,) in the same way that its terms apply to a bona fide creditor who may wish to redeem, have put tbe case in tbe most unfavorable condition for tbe debtor of which it is susceptible by any plausible construction. By this cons'ructton of the act, when Beauchamp came to redeem for Cooley, it was tbe duty of Weeks, upon receiving tbe 074 08|, be had paid to Bayliss to convey the negro to *144 Cooley, or if he was willing to gire more, he should hare nro-an advance upon the sum he had paid Bayliss, with which his judgment against, Cooley should have been credited, so that Cooley might determine whether he would let the negro remain in his hands or still redeem, by paying the enhanced sum. This was not done, but a positive refusal was made to ■permit a redemption until his entire judgment should be paid, and this without any offer to credit Cooley by the amount of that judgment; nor was that the intention or meaning of Weeks in making the payment of it a condition to the redemption. This is shown by the fact that he subsequently had an execution issued against Cooley for the whole amount of his judgment, except seven dollars. He acted upon the opinion, that a debtor bad no right to redeem until the whole debt of the purchaser were paid. In this he was clearly mistaken. We •therefore think that the tender made by Beauchamp was such as is required by the act of assembly.
But it is said in argument, that Weeks may now bid the value of his debt, which is more than the negro was worth at the expiration of the two years, and by crediting Cooley with her value, he may retain the negro. There is no principle upon which this can be done. By the tender the negro became in equity the property of Cooley, and as Weeks refused to bid then but kept the negro in defiance of law, he cannot now require of Cooley the sacrifice of his right; besides at the end of the two years the rights of the parties were fixed. Cooley could not redeem afterwards, nor could Weeks advance on the price hid. After the end of the two years from the time of the sale, the act of 1820 could have no further effect, except in tin enforcement of rights which were acquired under it during the two years. The tender which was made by Beauchamp and that spoken of by Scarborough, were made by them as agents of Cooley, and were so understood and treated by Weeks. It is true they both had a contract for (he purchase of the negro, should she be redeemed, but neither of them acquired any interest in the negro by the contract. Weeks was the absolute owner of the girl. The law annexed a condition to the sale by which Cooley was allowed to repurchase within a given time. Until a tender was made *145 bf the money which was required to be paid, he had no inter- • , . , , . , est m the slave, either legal or equitable. These therefore were necessarily prospective’, and when they failed to obtain the negro from Weeks, could have no obligatory force, and were treated by the parties as nullities. We think, therefore, that Cooley is entitled to the negro girl slave Delia, and to an account for the value of her hire from the time the tender was made by Beauchamp to Weeks.
But the defendants have a judgment at law against thé complainant, and the slave in controversy would be liablé to be levied on and sold for its satisfaction so soon as she may be delivered up to Cooley, Besides, the defendants in this’case have acted under a mistake of the law, and not with any bad faith, or in disregard of what they knew to be the rights of the complainant.
We think therefore, that their debt ought to be paid out of the sum they may be chargeable with for hire, and that any balance thereof which may not be so discharged be a lien upon the slave. An account will be taken between the parties as above indicated and reported at the present term.
Decree affirmed.